Council are here for 518.0251 Druse v. Schurman. Okay, why don't you take your respective positions and we'll go forward with that. And just for the record, we are calling 518.0251 Druse v. Schurman. Mr. Baldwin. May it please the Court. Good morning, Honorable Justices and esteemed Council. My name is Philip Baldwin and I am with the Scroggins Law Office out of Granite City, Illinois. I represent the respondent appellate in this case, Mr. Scott Schurman. We are here today before this Court to request that you remand this cause of action back to the lower court for a new trial, as we believe that the trial court's ruling, even when reviewing all of the evidence in light most favorable to the petition, was against the manifest weight of the evidence presented to that court. While we accept that this Court's purpose is not to reweigh the evidence that the trial court considered, and we acknowledge that there is presumption and a deference paid to the trial court's decision, even given that to be true, we believe that a review of the record shows that the trial court's decision was the result of passion and prejudice. It appears to be arbitrary in nature and unsubstantiated by the evidence. What is your contention about passion and prejudice of this order? Where in the order is it? Justice Gates, I believe that the passion stems from Judge Gomerich's irritation with Scott Schurman's handling of his 2015 tax return. Where he sent the money and she said she had an order in place not to do that? Do you agree that that happened? Absolutely, Judge. There's no denying that. So the fact that she, as you say, was irritated by the court order, do you think impassioned her to rule against her client on attorney fees? Well, as you know, Judge, the manifest weight of the evidence standard lists the passion or prejudice language as part of the overarching standard for review in this particular portion of the case. I don't believe that the judge was particularly impassioned. I don't believe that she was enraged in any form. I'm not trying to suggest that. I'm just saying that because of Mr. Schurman's pro se representation, because of his inability to conduct himself in accordance with proper rules and procedures, I believe that after a long lengthy process, the judge became frustrated with his performance and thus shut him down and issued the ruling that she did. When did your firm get involved? We picked up this case when my counsel's appellate counsel withdrew, and I believe that was in 2018, Your Honor. I don't have the exact date. So you didn't file the appeal? I did not. It was filed by Attorney Bruin and Your Honor. Okay. And your client was pro se during the proceedings in 2015? He was. His counsel, Barb Shearer out of Edwardsville, had withdrawn after our client had paid her a considerable amount of money. Well, my concern here is this 2015 order. Is there any dispute that your client did not receive notice of that order about not spending his tax returns? No, there's not. There's no dispute. He got notice of that order? He was aware that he was not to spend his 2015 tax returns. Okay. And I believe that, as we indicated in our brief, it was appropriate for him to be found in contempt for not complying with the court's orders. However, I would direct the court's attention to a case, McGuire, that opposing counsel included as part of her brief, which states that, one, even in cases where an individual doesn't comply with the court's order, if they have compelling cause justification for that behavior, the court can excuse that or take that into consideration. And I'll discuss that a little more in depth as I proceed with my argument, Your Honor. Well, you know, I've been known to interrupt, so you may not get there. So if it's important to you, you might want to talk about it. All right. I'll skip to that, Judge. If you don't mind, I'd like to hear that. What were the compelling circumstances for your client? That was the McGuire case? Yes. The petitioner cited to in remarriage of McGuire. And the citation for that was... That's okay. We'll get back to that. Don't waste your time on that. All right, Judge. Citing language which stated that when a party's failure to comply with an order is without cause or justification, an award of reasonable attorney's fees and costs is mandatory. However, in that very case, that court denied petitioner's award for attorney's fees. When that respondent had failed to pay interim maintenance, which had previously been awarded by the court, in their rationale for making that decision, the court cited to that respondent's testimony that he was not making enough money to pay his debts and maintenance, including payments on the marital home, joint credit cards, and other marital debt and car payments. And I would point out to the court that in the record, these very same expenses were laid off by the client at trial and in his financial affidavits produced to the court. Petitioner asserted that... You're now saying that his argument being his inability to pay. That's exactly right, Judge. Okay. He laid off his inability to pay in numerous settings before the court. The petitioner was correct in alleging that respondent has been in and out of bankruptcy court, and that's a fact. But his bankruptcy was dismissed. I mean, I think the position was that the bankruptcies were basically an attempt again to evade his responsibilities, right? I don't believe that that's accurate, Judge. Okay. Tell me why not. The respondent was engaged in bankruptcy proceedings prior to any filing by the petitioner. He was in bankruptcy proceedings going back to 2013. And as a matter of fact, in response to your statement that the bankruptcy is dismissed, that's also correct. It's been dismissed, reinstated, dismissed, reinstated. They've gone back and forth in and out of bankruptcy on a variety of times, and they are currently reentering bankruptcy proceedings as of this date. And this is based upon the fact that respondent suffered a precipitous reduction in earnings during the pendency of this action. Just as a result of lack of work, his earnings have declined, and his monthly expenditures obligations outweigh his current income. In particular to the 2015 return, I would point out to the Court that respondent has not alleged that her client had – I'm sorry, the petitioner has not alleged that her client was entitled to any portion of that 2015 refund. That, although being ordered to be held by the Court, it was – I don't believe that it was in contemplation that she had some claim to that money. But there had to be some reason the trial court ordered it to be held. Well, and I believe that's because of the contempt citation filed in 2015 that was filed at the same time that they filed a petition to modify child support based upon my client's – well, actually based upon their client's pursuit of a garnishment order against our client. Now, as we – But as Justice Bowie said, I mean, if your client is claiming inability to pay and you've got all these other contemplated orders, it would seem reasonable for the trial court to say, okay, we have the petition modified, content, we know there may be a refund, let's hold this money. I mean, you've been in several situations like that where I'm sure you've made the same argument. Of course. And, I mean, let's be honest, Judge. That's generally an opportunity to lock down a future award of attorney's fees, which is what much of this case seems to really resolve or revolve around. And that brings us to the heart of our contention in this case. Our contention is that when this case originated back in 1997 in St. Clair County, there were two initial orders. They were stipulated to read upon orders of support entered in the court. One was November 25, 1998, and the other one was in May of 2001. At the center of that family case was the support of a daughter, Jenna, that was born to the parties in September of 1997. Jenna is 22 years old. Petitioner and the respondent were never married. The initial order in 1998 granted custody of the child to her mother, subject to reasonable visitation by her father. The respondent was ordered to pay child support biweekly until Jenna reached the age of 18 or graduated from high school. There was no mention of any post-secondary support at that time. Petitioner, her client, was ordered to maintain health insurance through her employment, and our client was ordered to pay half of any medical expenses, including dental, orthodontic, optometric. Not covered by the insurance, to pay 50% of that. And by all accounts, he did all of that between 2001 when his support was upped. Now, that 2001 order is important. It mirrored the 1998 order's structure, ordering our client to pay what amounted to $150 biweekly in child support to Petitioner. And why is that important? Well, because the language of that order said that he had to pay $150 per paycheck, payable on or about the 5th and the 20th of each month. Now, many years later, in 2009, our client was reached out to by Petitioner, and she requested more child support. So they agreed to an amount of $225 biweekly. In 2011, the same situation happened. She reached out to him, said, I need more money, and he agreed to up his support payments to $245, again, biweekly. But no court order. But no court order was entered on either of those agreements. Now, for some reason, in December of 2014, Petitioner reached out to secure wage garnishment against Scott. Unfortunately for her, DHS would only garnish the amount ordered by the court back in 2001, which was the $150 biweekly, or $60-something per week was the breakdown. Now, this translated into a, somehow translated into a contempt petition, which was filed two months later in February of 2015, that was predicated on the fact that Scott, in their allegations, was required to pay $150 per week by that order, because he hadn't taken a position that was paid weekly. And that's where this entire five-year odyssey of support and contempt citations and petitions for attorney's fees and requests to produce documents and everything else snowballed from this. Was there ever in the record an order to validate the 2011 agreement of $245? I don't believe so, Your Honor. Our position was that that 2011 agreement should have been the basis for the appropriate cause of action in this case, which should have been just the petition for modification of child support, whereby both parties should have been brought before the court, produced their incomes, and had the child support laws, formulas, applied to the case, and a new child support amount entered. Thank you, Your Honor. I'm done. I'm sorry, Mr. Baldwin. Thank you, Judge. I bet you he'll get a few moments after Ms. Gossage gets to speak so you can finish that thought. We have to be bound by the rules here. I understand. Thank you, Justice. No problem. Ms. Gossage, whenever you're ready.  That doesn't help us. I'm going to try. My name is Rosa Gossage, attorney, sole practitioner in Belleville, Illinois. I represent Cheryl Drews in this matter. With respect, and I'm probably going to take a piecemeal because I only have ten minutes, and there's so much in this matter. I need to clarify something that Mr. Baldwin just said, and that is in 2015 it seems like we went from $150 biweekly to a contempt order for $150 weekly. Is that true? Paycheck. And that's what the argument was, per paycheck. Not $150 per week. Per paycheck. Per paycheck. So has his paycheck changed? Yes. He was making approximately just under $80,000 a year gross. No, but when the original order was entered, it was $150 split up per paycheck, right? It was two paychecks, and it wasn't biweekly. It was twice a month, and it totaled $300 a month per paycheck. But then, so you disagree with him that the order changed in your contempt order of 2015, February 15th. I don't. You said that you filed a motion for contempt and that, as I understood what you were saying, is you went from claiming $150 biweekly to $150 per week. Now. Did I misunderstand? Yes. What I did say is we filed a motion to increase the child support. We argued that it was not twice a month. He had changed jobs, and according to the testimony, according to my client's testimony, he hadn't told her about a number of the jobs he had changed from the 2015 to the present. He finally set on Nelson's tree service, and he made substantially more money, and he was paid weekly under Nelson per paycheck. When did you file that motion to increase? I don't remember. Okay. It's in the transcript, and it's in the case. I have it listed. Go right ahead. Now, is there any more questions regarding? Well, go ahead. I know we interrupt, but you have such limited time. I want to clarify something. This is extremely convoluted machinations by Mr. Sherman, and it's intertwined with his bankruptcies. Posting Council was wrong initially. He filed his bankruptcy initially in 1993. Thereafter, it was dismissed for his failure to turn over tax returns. He filed another bankruptcy in 2013 in June, dismissed for failure to turn over his 2013 tax returns. In 2015, he filed and was dismissed for failure to make plan payments and to turn over his tax returns. Again, he kept filing. He filed again in March 26, 2018. And if you look at the orders entered in the case, they sort of entered right after the trial court entered the order, ordering him to pay something. So in March 26, he files another bankruptcy. She had filed a relief of stay in order to even get child support or get the 529 account. She had to go hire an attorney in the bankruptcy, lift the stay so she could go into the trial court because the trial court would not hear anything, anything as long as there was a bankruptcy pending. Now, on March 5, 2019, Mr. Sherman dismisses his Chapter 13 bankruptcy. Then what happens is if you look at his financial affidavits, the one I believe he filed in 2019, he's claiming that he can't afford to pay anything because he's in bankruptcy. But it already had been dismissed prior to his filing of the financial affidavit. This gentleman has avoided some of the court orders. Has your client ever gotten his tax returns? Yeah, eventually. I subpoenaed him. I eventually got him. There was one situation where he showed up in court with a tax return that day, even though I requested previously, not signed and not dated. One time the court had sent his wife back to the home to get a copy of the tax return. He had left there. Yes, sometimes I do get him, and that's how we find out how much he was making. And he was making close to $80,000, and I believe she was making a little over $50,000. So there was a great disparity of income. With respect to the attorney fees issue, she's the one that supported the child. She's the one that ended up paying for college, for maintenance of the child. He hasn't paid hardly anything. The only money we've got is when the court ordered him to turn over the 529, and we had to go back to court on that. What about the nature of the fee award? You filed an affidavit on that? Yes, I filed. And it was based on, during the pendency of the case, when I filed a motion to compel for sanctions, I also requested attorney's fees. And the court kept adding, I'll take it under advisement, I'll reserve the issue. And I also filed a motion for contribution in this case. So that was also pending. The court had the figures. And if you look... Did the court hold the hearing on your fees or just use the affidavit? I believe she just used the affidavit. So was the respondent there when she made that determination? Yes. But you have to look at our sheer pain. He was paid by whom? $18,000. That's in the transcript. He paid Daniel Gruninger additional attorney's fees. He's paid Mr. Baldwin attorney's fees. He's paid his bankruptcy attorney at least three or four times. And the last one I saw was Mr. Graham, just paid $4,500. By the way, Judge Gomrick had a body attachment issued October 29th for failure to comply. He was in court that day. Is that before us in the record? Well, it goes with the bankruptcy and the payment of bankruptcy. That's not in this record, is it? No, it happened just a few weeks ago. Okay. But it's the pattern that I'm trying to show you. There's a court order entered. He's supposed to pay. He files for Chapter 13. Did your client receive the 529 account? Eventually, yes, after we went to court. The only issue before us today, though, are the issues surrounding the award of attorney fees, isn't it? I don't think that's the only issue. And the attorney's fees, if you look at level of the playing field, that's one of the issues here. He spent a lot of money. That wasn't filed under the level of playing field statute, was it? The contribution, I believe, was filed after the level of playing field was enacted. But in addition to that, if you look at the fact that he has repeatedly, I believe I cited the statute, 508B, that he has failed to comply with orders. I don't, and the judge can do this on her own, without cause or justification. The court shall order the party against the proceeding who is brought to pay promptly the cost and reasonable fees of prevailing party. And we have numerous, just numerous incidents of his failure to comply, of his refusal to comply, of his continued abrogation of what our system is about here. But going back to Justice Kitt's question, there's a difference between an award of attorney's fees in a contempt proceeding versus attorney fees in a contribution proceeding. They're two distinct, different things. And all of this was brought before the judge, Judge Gomer. All of it was there. And again, she may not have said, okay, I'm giving you $3 for the contempt and $5 for the contribution. I don't think they have to do that. There was enough evidence presented of his failure to comply with court orders, failure to comply with discovery. And she gave him a lot of rope in order to comply. My client's attorney's fees are ridiculous. I'm sorry. But to go back to my point, and I'm just going to paraphrase, 750 ILCS 5503J, the court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's cost and attorney's fees, and then at the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party. That's, I just, you say it all kind of comes together, and we should affirm the court with just a blanket grant of fees when the statute says you've got to piecemeal those two different things and have a hearing on it. I think the court has, I know the court has ordered contempt, because one of the reasons that, this is after this matter, the court has ordered contempt issues. Okay, but. But here, she reserved the contempt issues. We're stuck here in time. We're stuck here in time. Yeah, but she reserved the contempt issues from prior matters, repeatedly back in court, back in court, back, and it was reserved always, except, well, that's in future time. But I think at this point that we've discussed that you've practiced this kind of law a long time. Mm-hmm. And my question to you is, what can this court do as a remedy to prevent this kind of appeal? I mean, we see these patterns, as you call them, repeatedly. I. What relief are you asking for? I'm asking for dismissal of the appeal. Because? Because that the court was proper, and it was very detailed in its order. You want dismissal or an affirmant? An affirmant, I'm sorry. Affirm not the appeal, because I'm not appealing, but affirm the judgment and the order. Well, the order was to pay the attorney fees, and then they're also contesting the post-secondary education expenses. Yes. But you got the college. $529 is only about $1,000. Okay. And my clients had to be paying. The child lives with her. She pays for the car. She pays for the car insurance. She pays the medical expenses. What about the fact that he did pay money in excess of $150? Should the court have credited him for at least that payment? Well, it depends on what he was paying, $150. He was paying $150, then he went to $225, then he went to $245. What about a credit on those amounts? He was credited when the court determined what the child support should be. He was credited with the amounts he paid. And that would be at paragraph 38 of the order, correct? Yes, I believe so. And I'm looking at C259. But what I found interesting was this. But their notice of appeal says they didn't get credit for that, refused to credit them for payments in excess of a court-ordered amount. When we went through it, what was refused was prior to the filing of the motion to modify. The court, in fact, said, I'm not going to deal with that. I'm not going to say that he owes any money. But this was volunteering. And what I found interesting, if he was supposed to pay $245, I found October 11 he chose to pay $139 of the year 2011. He's made different types of payments. And then, if this was an agreed-upon thing, back in December 2014, December 2030, then reduces it to $69.23 a month, or a week, excuse me. So it's not an agreement if he can voluntarily reduce it. These are voluntary payments. But he was given credit for the amount he paid as child support for the period of time after we filed the motion to modify. But not credit for any overpayment. He didn't make an overpayment from that period on because there was more. The child support due was more than he had paid. Which goes back to, I think, my original question. There was a motion to increase the child support. Because when I look at paragraph 38 of that order, Judge Gomrich goes through it and says this is what his child support would have been at this time. Therefore, he would have owed X amount. So she made these findings, and that's why I wanted to clarify. There was a motion to increase pending, or did she do that sui sponte? No, there was a motion to increase pending. And there was a demonstration of an exhibit given to her. And I believe she referred to that, or it's in the transcript that shows, okay, he got credit for all of this, so he only owed this amount of money. Okay. Okay. Now, with respect to the contempt issues in the McGuire, one of the things that McGuire stands for is there has to be compelling reasons. There were none given by Mr. Sherman at all for compelling reasons. Jenna, his daughter, has been going to college. And I think the only payments he may have made, aside from minor payments, was the 529 account. Okay. Thank you, Ms. Kovach. Ms. Kovach, you are adjourned.  Thank you. Justices, I would like to respond to a number of allegations that opposing counsel made during the course of her statements, the first of which was that their allegation that in opposition or in defiance of the court order, my client didn't report to her client any change in jobs that he experienced between 2001 and 2019. And I would point out to the court in the record, supplemental record R11, that as a matter of fact, her client admitted in testimony under oath on October 26, 2016, that Scott had informed her of his changes in employment, that she was fully aware of where he worked and when he did it. Specifically, she knew that he went off to school in 2009 to become trained for his last job with the Nelson Tree Service. Second, I'd like to answer the judge's question as to when the motion to modify was filed. It was filed on the same day as the motion for contempt was filed, back in February of 2015, simultaneously. In regards to her comments about my client's behavior during his involvement in bankruptcy court, I would state that there is no correlation between what he did with the bankruptcy court and what he was ordered to pay in this case. During the pendency of this action, he's been represented by J.D. Graham out of Southern Illinois in his bankruptcy proceedings. And he has only and ever complied with the recommendations of his bankruptcy attorney. Now that... That's not something we can get into. We can't look at that. I understand that it was brought up because that allegation was brought outside... I understand, but the record is clear that the bankruptcy was filed here, was dismissed here. What about his pattern of noncompliance with Judge Gomerich's orders? I would say that Judge Gomerich addressed that, the issue of his noncompliance, when she awarded Petitioner, if you'll give me just one second, Your Honor, approximately $1,100 in attorney's fees for the work that she had to do in bringing the issue of his nonpayment of his 2015 tax returns up to the court. And somehow that $1,100 award ballooned into an award of $11,000 in attorney's fees for everything that opposing counsel did with or for her client during the previous... at that point, four years of the case. Now... So I'm looking at your notice of appeal, and I think that's what we're kind of stuck with here. Yes, Your Honor. And the very first issue is whether the court ordered when it... aired when it ordered the respondent to pay the Petitioner's attorney fee. My question to you is, was this a sanction? Was this a level of playing field? What was this, in your opinion? Well, I think the record is clear that this was a sanction, that Judge Gomerich was punishing him for his... Well, I don't know if I'd use the word punishment, but you agreed in your brief, as you have already pointed out, that it was appropriate. This was your opening line. It was appropriate for your client to have been found in contempt. So you've agreed to the contempt. Why, then, would it be inappropriate for the court to award attorney fees on a contempt finding? It's not. And specifically, as I'm stating, Judge, Judge Gomerich articulated in her October 3, 2017, order that opposing counsel was entitled to $1,186.90... You may finish. ...for her, for the cost of bringing that action before the court. But nowhere in the proceedings did Judge Gomerich go into a level of playing field discussion, go into a contribution of attorney fees discussion. We've never had one scintilla of evidence, and you can't find it in the record, that we had a discussion regarding contributions of attorney fees outside of her specific award for his contemptuous behavior. Okay. But you were providing extensive records. I think Ms. Gossage did very extensive check subs and records of expenditures. And if she had, as a trial court, before her documents from which she could make that determination, is it necessary that you have that?  As previously articulated by the Justice, it is an evaluation, as we stated in our brief, an evaluation of any type of leveling the playing field argument is contingent upon a review of really both parties' financial position. And at no point was my client given an opportunity or was there any discussion or testimony or evidence seduced about, at least in the trial phase, as to her earnings, her need for contribution. And I would contest some of the earnings figures that were represented to the court today about their client's earnings while employed with the Illinois American Water Company. She has earned in excess of $60,000 a number of years and has significant assets as well. Wait. I'm sorry, Judge. Your time has expired, but the justices are allowed to. So if you're responding to the court's question, that's fine. But you get the answer to your question. Okay. I don't want to be unfair to Ms. Gossage is all I'm saying. I understand, Justice. No, no. There's another question. Okay. To just this last point, and you quoted at page 8 of your brief, this is paragraph 48 of that order you just referenced, where the court awards a total sum of $11,192.81 being the attorney's fees and cost of Attorney Gossage. And it goes on, but then it says, It appears that the respondent, Scott Sherman, had sufficient funds to pay his attorney during the pendency of this case, but did not provide for his daughter. Said amount of $11,192.81 is a judgment in favor of the petitioner and against respondent. So my reading of that is, at some point in this record, there had to be some sort of discussion regarding the ability to pay, or maybe there's not. That's why I'm asking the question. And my answer to that is that there is not. This appears to, as a matter of fact. There were financial affidavits on file. Yes, there were. I mean, you may not have had a conversational hearing, but certainly as Justice Wharton pointed out, there was evidence in the record, right? None of which that I believe was introduced in the trial. The financial affidavits were in. They were part of the record of the case, Justice. And they were before the court. Yes. They would have been before the court. As I understand the rules at the local court levels now, you have to file these financial affidavits and keep them updated, and they become a part of the record. Is that true, Mr. Goldman? That is true. But as the Justice is aware, the modifications of calculation of child support and things changed pretty dramatically within the last couple of years, and include now the phrase escapes me at the moment, but a review of both parties' earnings to correctly calculate child support. Do you know when the last financial statement was filed by Mr. Shona? Justice, I'm sorry. I don't have that information at my fingertips right now. I could provide it to the court at a later time. No, we can't let you do that. Ms. Gossage, do you have that? No. February 7th, 2019, maybe? February 7th, 2019. Thank you. This is a very unusual question, so I'm going to ask both parties this. I'll give both of you a chance to respond. Yes, Justice. If this case is remanded, are you both aware of the case that now declares the portion of the statute requiring one party to pay post-education expenses unconstitutional? Yes. Oh, that, yes, I do, but that's being heard by the Supreme Court. Yes, it will be heard by the Supreme Court. But on remand, if this is remanded as opposed to affirmed, do you think that's going to play a part in this case? What's going on in the courts below on that? At this point? Yes. I don't think the courts have adopted a case in the Fourth District. Yes. I haven't been adopted in the Fourth District. Do you point? I'm serious at this point. Well, it will go directly to the Supreme Court, obviously, because they're talking about statute. But I was just curious if it would impact this case in any way. We haven't adopted it in the Fifth District, but it will be interesting to watch because this is a post-high school case. Right? We're talking about secondary education. It's also not on the Supreme Court. I mean, it includes, I should say. It's not limited to that. I understand that. I've been exposed to them the last six months. They're going still to the post-high school. Okay. All right. I was just curious about that. From my perspective, we would, of course, raise those issues at the. . . Well, I was sure he would. But we don't know what's going to happen. I'm not sure that. . . Well, anyway, any other questions, Justices? No. Thank you both. Thank you, Justices, for your time. Very difficult case. All right. That concludes the morning docket for December 11th. We do not have an afternoon docket as oral arguments have been weighed. So we will be in adjournment until tomorrow morning at 9 o'clock on December 12th, 2019. Thank you all.